**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MINSURG INTERNATIONAL, INC.,**

    Plaintiff,

vs.                                                        **Case No.: 8:10-CV-1589-T-33EAJ**

**FRONTIER DEVICES, INC., et al.,**

    Defendants.
_____/

### REPORT AND RECOMMENDATION

Before the court are Plaintiff's **Motion for Preliminary Injunction** (Dkt. 9), Defendants' **Joint Opposition** (Dkt. 98) and individual responses (Dkt. 87, 91, 92, 94, 95, 100), and the parties' **Statement of Undisputed and Disputed Facts and Issues With Regard to Issue of Likelihood of Success on the Merits** (Dkt. 137).[1] Plaintiff contends that its method patent is being infringed by: 1) Frontier Devices, Inc. ("Frontier"); 2) Osteotech, Inc. ("Osteotech"); 3) NuTech Medical, Inc. ("NuTech"), NuFix, Inc. ("NuFix"), and Kenneth Horton ("Horton"); 4) VG Innovations, LLC ("VGI") and Danny Wayne Grayson ("Grayson"); 5) Bacterin International, Inc. ("Bacterin"); and 6) Facet Fusion Technologies, LLC ("Facet Fusion"). The court has conducted an evidentiary hearing and heard argument on the motion. For the reasons stated herein, the motion should be denied.

### Findings of Fact

1.    In May 2010, the U.S. Patent and Trademark Office ("USPTO") issued U.S. Patent No. 7,708,761 ("the '761 Patent") to Plaintiff. The '761 Patent includes two independent claims

---

[1] The motion has been referred to the undersigned for a report and recommendation (Dkt. 17).

(Claims 1 and 11), each of which is referenced by nine dependent claims (Claims 2-10 and 12-20).

2. The '761 Patent issued from U.S. Patent Application No. 11/232,519 ("the '519 Application"), filed in September 2005 and assigned to Plaintiff in June 2009.

3. In January 2010, a USPTO Examiner amended the '519 Application (Dkt. 101 Ex. 21). The Examiner added the phrase "An arthroscopic type portal facet surgical" before the word "method" in what ultimately became Claims 1 and 11. In the "Reasons for Allowance," the Examiner distinguished the "minimally invasive procedure" contemplated by the '519 Application from prior art contemplating "open surgery (an invasive procedure)."

4. Claim 1 provides as follows:

1. An arthroscopic type portal facet surgical method comprising:

placing a portal into a human patient through a minimally invasive incision in the tissue of said human patient;

accessing a facet joint through said portal, wherein said facet joint comprises a first facet joint bone and a second facet joint bone, and wherein said first facet joint bone comprises a first articulated surface and said second facet joint bone comprises a second articulated surface, and wherein said first articulated surface and second articulated surface face each other at said facet joint;

inserting a drill bit into said portal;

drilling a hole with said drill bit into said facet joint between said first articulated surface and said second articulated surface through said portal;

removing said drill bit from said hole through said portal;

inserting a facet joint fusion plug into said hole through said portal;

inserting a tamping instrument into said portal; and

tamping said facet joint fusion plug into said hole with said tamping instrument through said portal.

5. Claim 11 is identical to Claim 1 except the final two limitations are replaced by the following limitation:

   pushing said facet joint fusion plug into said hole through said portal, wherein said facet joint fusion plug comprises bone.

6. Plaintiff's TruFUSE system and Defendants' systems are instrument kits containing surgical tools and implants. They are marketed to physicians for use in spinal fusion surgeries.

7. Spinal fusion surgeries may be performed on a facet joint through a "minimally invasive" incision or an "open" incision. A minimally invasive incision is "very small" and generally involves stretching tissue and viewing the facet joint with fluoroscopy (Dkt. 156 ("Hearing Transcript") at 30:12-30:15, 34:4-34:6, 36:8-36:13). An open incision is larger than a minimally invasive incision and involves using a knife to dissect tissue until the spine can be seen directly (Id. at 34:6-34:10, 34:16-34:21, 70:25-71:4).

8. According to the credible testimony of James B. Macon, M.D., the vast majority of spinal fusion surgeries are performed through an open incision as opposed to an arthroscopic type portal (Dkt. 101 Ex. 23 at ¶ 24; Hearing Transcript at 96:6-97:9).

9. Although Plaintiff maintains that its system is particular to minimally invasive surgeries, information packages dated 2009 which Plaintiff distributed to hospital committees state that Plaintiff's system "was developed as a mini-open/open invasive tool for the fixation of facet joints in the lumbar spine" (Dkt. 10 Ex. 6 at 1). Surgeries using Plaintiff's system can be "[p]erformed in a mini-open or open fashion" and without minimally invasive endoscopic techniques (Id. at 1, 3, 5). A separate incision is "occasionally considered" when using

3

Plaintiff's system during an open procedure (Id. at 6).[2]

10. Marketing/informational materials indicate that Frontier's, NuFix's, Bacterin's, and Facet Fusion's systems could be used to perform spinal fusion surgeries through either a minimally invasive incision or an open incision (Dkt. 11 Ex. 7 at 1, 16; Dkt. 11 Ex. 12 at 1, 4, 7, 9; Dkt. 12 Ex. 3 at 1-2, Ex. 4 at 1-2; Dkt. 12 Ex. 7 at 1-2). Frontier and NuFix did not distribute these materials after the '761 Patent issued (Dkt. 91 Ex. A at ¶¶ 10, 12-13, 15; Dkt. 93 Ex. 1 at ¶¶ 10, 12). There is no evidence that Bacterin or Facet Fusion did so either.

11. A "YouTube" video provides that, in using VGI's system, the facet joint should be localized "indirectly by fluoroscopy or directly by visualization during open procedures" (Dkt. 11 Ex. 15 at 1). There is no evidence that VGI distributed this video after the '761 Patent issued.

12. David Clark Lee, M.D., has performed facet joint fusion surgeries using Osteotech's system, always as open surgery and never as minimally invasive surgery (Dkt. 88 at ¶¶ 10-11).

13. Mark Prevost, M.D. has implanted hundreds of facet fusion implants and regularly uses NuFix's system (Dkt. 93 Ex. 3 at ¶¶ 2, 5). "In every case, [he] ha[s] used an open or mini-open technique in which an incision is made, followed by dissection until the facet joints ... can be directly visualized and accessed through the incision" (Id. at ¶ 5).

14. As of September 1, 2010, more than 90% of the implants sold by Facet Fusion were implanted using an open incision method (Dkt. 99 at ¶ 38).

---

[2] Michael Drerup, M.D.'s affidavit was filed in connection with Plaintiff's motion (Dkt. 12 Ex. 14). Plaintiff's information packages undermine Dr. Drerup's opinions that: 1) "when surgeons perform facet fusion surgeries using facet fusion plugs and portals, the portal is inserted through a minimally invasive incision in the tissue of the patient;" and 2) "a surgeon performing a facet fusion using a surgical kit that included a portal would not perform the facet fusion in a truly open procedure" (Id. at ¶¶ 3, 12).

**Standard of Review**

When seeking a preliminary injunction, a plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 129 S. Ct. 365, 374 (2008). Given the "extraordinary and drastic" nature of preliminary injunctions, they may be granted only where the plaintiff clearly satisfies the burden of persuasion as to each of these requirements. All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989). To meet its burden the plaintiff may rely on affidavits and hearsay materials that would not be admissible as evidence for the entry of a permanent injunction. Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995).

**Conclusions of Law**

Plaintiff claims that each Defendant: 1) directly infringed the '761 Patent, either literally or under the doctrine of equivalents; 2) knowingly and actively induced infringement; and 3) contributed to infringement (Dkt. 1 ¶¶ 101-103, 151-153, 189-191, 226-228, 262-264, 300-302, 338-340, 372-374, 410-412). Plaintiff submits that preliminary injunctive relief is necessary because "[e]ach Defendant does this by providing explicit instructions with its bone plug and surgical instrument products for use in spinal facet joint fusion surgery that cause surgeons to directly infringe the surgical methods claimed in [the] '761 Patent" (Dkt. 9 at 2). Plaintiff contends that "Defendants' ongoing sales and marketing activities ... affirm each Defendant's continued specific intent to induce the direct infringement" (Id.).

A method patent, such as the '761 Patent, "is directly infringed only by one practicing the patented method." Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 775 (Fed. Cir. 1993). "Direct

infringement requires a party to perform or use each and every step or element of a claimed method or product." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373, 1378 (Fed. Cir. 2007) (citation omitted). "For process patent or method patent claims, infringement occurs when a party performs all of the steps of the process." Id. at 1379 (citation omitted).

Defendants do not perform the steps of the process set forth in the '761 Patent because they do not perform spinal fusion surgeries. Rather, Defendants sell systems used by physicians to perform such surgeries. Consequently, Plaintiff is not likely to succeed on its claims of direct infringement.

"[A] party's acts in connection with selling equipment may, however, constitute active inducement of infringement or contributory infringement of a method claim." Joy Techs., 6 F.3d at 774; see 35 U.S.C. § 271(b)-(c). A finding under either theory of indirect infringement must be predicated on a finding of direct infringement. Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1215 (11th Cir. 2010) (citation omitted). Direct infringement may be found where: 1) there are specific instances of direct infringement; or 2) the accused products necessarily infringe. Ricoh Co., Ltd. v. Quanta Computer Inc., 550 F.3d 1325, 1341 (Fed. Cir. 2008).

Claims 1 and 11 prescribe a method for performing spinal fusion surgery through a "minimally invasive" incision.[3] The Examiner's amendment confirms that the '761 Patent covers

---

[3] The parties dispute the meaning and importance of the phrase "arthroscopic type portal," which appears in the preambles to independent Claims 1 and 11 as well the limitations in dependent claims 4 and 15 (Dkt. 10 Ex. 4). See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., 381 F.3d 1111, 1118 (Fed. Cir. 2004) ("Language in a preamble limits a claim where it breathes life and meaning into the claim ... but not where it merely recites a purpose or intended use of the invention.") (citation omitted). The dispute need not be resolved at this time as Claims 1 and 11 are expressly limited to procedures involving a "minimally invasive incision in the tissue of [a] human patient" (Dkt. 10 Ex. 4).

a process distinguishable from spinal fusion surgery performed through an open incision. The vast majority of spinal fusion surgeries, however, are performed through an open incision. Based on the current record, none of Defendants' systems necessarily infringes the '761 Patent as these systems can be used in non-infringing open surgeries. See ACCO Brands, Inc. v. ABA Locks Mfrs. Co., 501 F.3d 1307, 1313 (Fed. Cir. 2007).

This substantial, non-infringing use of Defendants' systems precludes their liability for indirect infringement unless there is "evidence of active and willful inducement." Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1276 (Fed. Cir. 2004). "Evidence of active steps taken to induce infringement, such as advertising an infringing use, can support a finding of an intention for the product to be used in an infringing manner." Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1322 (Fed. Cir. 2009) (citation omitted).

Plaintiff relies on marketing/informational materials which indicate that Defendants' systems can be used in either minimally invasive or open procedures. In some instances, such circumstantial evidence can support a finding of indirect infringement. See Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1267 (Fed. Cir. 2007) (finding indirect infringement could be established by "circumstantial evidence of extensive puzzle sales, dissemination of an instruction sheet teaching the method of restoring the preselected pattern with each puzzle, and the availability of a solution booklet on how to solve the puzzle"). But in this case Plaintiff provides no evidence from a physician confirming the use of any of Defendants' systems in a minimally invasive procedure. See ACCO Brands, 501 F.3d at 1313 (emphasizing plaintiff's failure to proffer testimony by device users indicating direct infringement). Moreover, whether the materials demonstrate active and willful inducement is questionable as: 1) Frontier's and NuFix's materials were not distributed after the

'761 Patent issued; and 2) there is no evidence that any other Defendant's materials were distributed after the patent's issuance. See Collegenet, Inc. v. Applyyourself, Inc., Nos. CV-02-484-HU, CV-02-1359-HU, 2004 WL 2050489, at *15 (D. Or. Jan. 20, 2004) (questioning how documents drafted before a patent's issue could demonstrate deliberate marketing of an infringing feature).

In sum, the current record does not establish specific instances of infringement stemming from active and willful inducement or that use of any of Defendants' systems necessarily infringes the '761 Patent. Consequently, it is not likely that Plaintiff will succeed on its claims for direct infringement or its claims for induced infringement and contributory infringement, which must be predicated on a finding of direct infringement.

## Conclusion

Plaintiff has failed to demonstrate that it is likely to succeed on the merits of its patent infringement claims. Consequently, Defendants should not be preliminarily enjoined from selling or marketing their spinal fusion surgery systems.[4]

It is therefore **RECOMMENDED** that:

(1)     Plaintiff's Motion for Preliminary Injunction (Dkt. 9) be **DENIED**.

**Date: November 5, 2010**

---

[4] Because Plaintiff has failed to demonstrate that it is likely to succeed on the merits, there is no need to address the remaining preliminary injunction factors or Defendants' challenges to the validity of the '761 Patent. See A.G. Design & Assocs. v. Trainman Lantern Co., 271 F. App'x 995, 999 n.5 (Fed. Cir. 2008) (unpublished); see generally Adams Arms, Inc. v. Sig Sauer, Inc., No. 8:10-CV-146-T-27TGW, 2010 WL 3119777, at *12 (M.D. Fla. Aug. 2, 2010) (noting that, "[i]n the preliminary injunction context, once an alleged infringer presents evidence of invalidity, the movant must respond with contrary evidence and bears the burden of persuading the court that, 'despite the challenge presented to validity, the [movant] nevertheless is likely to succeed at trial on the validity issue'") (quoting Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1377 (Fed. Cir. 2009)) (alteration in original).

/s/ Elizabeth A. Jenkins
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge