UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MINSURG INTERNATIONAL, INC.,

    Plaintiff,

v.                    Case No.  8:10-cv-1589-T-33EAJ

FRONTIER DEVICES, INC., et al.,

    Defendants.
_____/

## ORDER

This matter comes before the Court upon consideration of Defendant Dan Grayson's Motion to Dismiss (Doc. # 118), filed on September 21, 2010.  Plaintiff Minsurg International, Inc. filed a Response in Opposition (Doc. # 150) on October 8, 2010.  In this patent infringement dispute, Grayson moves the Court to dismiss all claims against him pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  For the reasons that follow, the Court denies the Motion.

**I.  Factual Background**

Minsurg alleges that Grayson infringed United States Patent Nos. 7,708,761 and D603,502.  (Doc. # 1 at 69-70).  The Complaint asserts related counts against Grayson based on the Lanham Act, the Florida Deceptive and Unfair Trade Practices Act, common law unfair competition and defamation.  (Doc. # 1

at 71-75). Grayson, the President and Chief Executive Officer of VG Innovations, a fellow defendant in this action, is a resident of the state of North Carolina and maintains his domicile there. (Doc. # 118-1 at 2). VG is a Delaware corporation with its principle place of business in North Carolina. (Doc. # 118-1 at 2). VG manufactures a spinal implant product and procedure called the "VerteLoc Spine Stabilization System" for the treatment of lower back pain. (Doc. # 118-1 at 2).

While VG maintains an engineering office in Florida, Grayson alleges that he has "never traveled [to that office] for any purpose whatsoever" and "operate[s] exclusively out of [VG's] North Carolina Corporate Headquarters." (Doc. # 118-1 at 4). Grayson submits that "any contact that I may have with the State of Florida through the marketing, selling, and distributing of VerteLoc . . . was due purely to my employment at [VG], performed solely in my corporate capacity as President and CEO of [VG]." (Doc. # 118-1 at 3).

## II. **Legal Standard**

In determining whether personal jurisdiction exists over a defendant accused of infringing a patent, the law of the Federal Circuit governs. <u>Autogenomics, Inc. v. Oxford Gene Tech. Ltd.</u>, 566 F.3d 1012, 1016 (Fed. Cir. 2009).

2

"In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

General personal jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." Autogenomics, Inc., 566 F.3d at 1017 (quoting Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003)).

"Specific personal jurisdiction must be based on activities that 'arise[] out of' or 'relate[] to' the cause of action, and can exist even if the defendant's contacts are 'isolated and sporadic.'" Silent Drive, Inc., 326 F.3d at 1200 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985)).

"With respect to specific jurisdiction, [two questions apply]: (1) whether the forum state's long-arm statute would permit service of process under the circumstances of the case, and (2) whether the assertion of personal jurisdiction would

violate due process." Campbell Pet Co. v. Miale, 542 F.3d 879, 882 (Fed. Cir. 2008)(applying the Washington long-arm statute); see F&G Research, Inc. v. Paten Wireless Tech., Inc., No. 2007-1206, 2007 WL 2992480, at *1 (Fed. Cir. Oct. 15, 2007).

### III. Analysis

Grayson argues that Minsurg has failed to plead sufficient facts to establish either general or specific personal jurisdiction over him. (Doc. # 118 at 6). This Court will address general jurisdiction and specific jurisdiction in turn.

#### A. General Jurisdiction

A court does not have general jurisdiction over a defendant unless the defendant's activities within the forum state qualify as "continuous and systematic." Marcinkowska v. IMG Worldwide, Inc., 342 Fed. App'x 632, 635 (Fed. Cir. 2009). Minsurg fails to assert any argument in its Response in support of its general jurisdiction theory.

Grayson submits that he: (i) has never resided in Florida; (ii) has never voted in Florida; (iii) operates exclusively out of VG's North Carolina office; (iv) has never paid or filed taxes in Florida; (v) has never owned or leased any property in Florida; (vi) does not have a Florida driver's

4

license or Florida registered vehicles; (vii) has never held any licenses or permits issued by the state of Florida; (viii) has never owned any assets or bank accounts in Florida; (ix) does not travel regularly to Florida; (x) and has never maintained a telephone number, listing or mailing address in Florida. (Doc. # 118-1 at 3-4).

Thus, even construing the pleadings and affidavits in the light most favorable to Minsurg, the Court concludes that Minsurg fails to allege that Grayson maintains the kind of continuous and systematic contacts in Florida which would confer general personal jurisdiction. See Autogenomics, Inc., 566 F.3d at 1017.

### B.  Specific Jurisdiction

Even without continuous and systematic contacts, the Court may exercise personal jurisdiction over a defendant where the cause of action arises out of or relates to the defendant's activities in the state. Silent Drive, Inc., 326 F.3d at 1200 (citing Burger King Corp., 471 U.S. at 472-73).

In undertaking the specific personal jurisdiction analysis under Federal Circuit law, this Court must determine first whether the exercise of personal jurisdiction complies with Florida's long-arm statute. See Campbell Pet Co., 542 F.3d at 882 (Fed. Cir. 2008). Next, the Court must consider

5

whether the exercise of personal jurisdiction would violate due process. Id.

Preliminarily, Grayson submits that the corporate shield doctrine precludes a finding of personal jurisdiction under the Florida Long Arm statute, because any acts he performed in Florida were on behalf of VG. (Doc. # 118 at 8). The Court will address this issue at the outset.

### C. Corporate Shield Doctrine

Citing Doe v. Thompson, 620 So. 2d 1004, 1005 (Fla. 1993), Grayson argues that acts of a corporate employee performed in his corporate capacity may not form the basis for jurisdiction over the corporate employee in his individual capacity. Id. at 1006; (Doc. # 118 at 8).

In Doe, the plaintiff was sexually assaulted while working alone in a convenient store owned and operated by Southland Corporation. Id. at 1005. The plaintiff sued the defendant, the president and chief executive officer of Southland, in his personal capacity for gross negligence in failing to take adequate security measures to make the store reasonably safe. Id. The Doe court held that long-arm jurisdiction did not exist over a nonresident corporate officer whose negligent actions were not alleged to have been taken outside his duties as company president. Id. at 1006.

6

Doe is distinguishable from the present case. Here, Grayson is being sued for intentional misconduct[1] rather than negligent conduct. Notwithstanding the corporate shield doctrine, a corporate officer who commits intentional misconduct may be subject to personal jurisdiction. Id. at 1006 n.1. Based on the foregoing, this Court concludes that it may consider Grayson's intentional and knowing marketing of the allegedly infringing VerteLoc product in its personal jurisdiction analysis.

### D. Florida Long Arm Statute

The Court must now determine whether the exercise of personal jurisdiction over Grayson complies with Florida's long-arm statute. See Campbell Pet Co., 542 F.3d at 882. Although not directly stated in the Complaint, it appears that Minsurg alleges that specific jurisdiction as to Grayson is appropriate pursuant to Florida Statute sections 48.193(1)(a), 48.193(1)(b), and 48.193(1)(f)(1 & 2). (Doc. # 1 at 11).

Grayson contends that this Court lacks jurisdiction over him and supports that contention with an affidavit. (Doc. # 118-1). Accordingly, a specific burden-shifting scheme

---

[1] The counts against Grayson allege patent infringement, false advertising under the Lanham Act, unfair competition, violation of the Florida Deceptive and Unfair Trade Practices Act, and defamation. (Doc. # 1 at 69 - 75).

7

applies in this case. As stated in <u>Walt Disney Co. v. Nelson</u>, 677 So. 2d 400, 402-03 (Fla. 5th DCA 1996):

> The burden of demonstrating the applicability of § 48.193 may initially be met by pleading facts within a jurisdictional basis contained in the statute. If the plaintiff has pled a prima facie case for jurisdiction, a simple motion to dismiss for lack of jurisdiction must fail, as a motion to dismiss, without more, challenges only the facial sufficiency of the jurisdictional pleading. If, however, the defendant supplements the motion with an affidavit contesting jurisdiction, then the burden returns to the plaintiff who must, by affidavit or other sworn statement, prove a sufficient jurisdictional basis.

<u>Id.</u> (internal citations omitted); <u>see</u> also <u>Future Tech. Today, Inc. v. OSF Healthcare Sys.</u>, 218 F.3d 1247, 1249 (11th Cir. 2000)(quoting <u>Prentice v. Prentice Colour, Inc.</u>, 779 F. Supp. 578, 583 (M.D. Fla. 1991)).[2]

In the Complaint, Minsurg established a prima facie case for personal jurisdiction over Grayson. (Doc. # 1 at 11). Through his affidavit, Grayson rebutted Minsurg's jurisdictional allegations. (Doc. # 118-1). In turn, Minsurg

---

[2]<u>Prentice</u> held that, after a plaintiff alleges sufficient facts supporting the exercise of personal jurisdiction under a long-arm statute, "the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." 779 F. Supp. at 583.

8

filed a response in opposition and the signed, sworn declaration of Frank Scalfaro. (Docs. ## 150, 151). Scalfaro is Minsurg's Chief Financial Officer, and "is actively involved in all operational aspects of the company." (Doc. # 151 at 1).

Scalfaro contends that Grayson is a former Minsurg employee who gained "significant confidential proprietary information about [Minsurg] and . . . [the] TruFUSE system" during his employment and went on to create VerteLoc, a "knock-off" product of Minsurg's TruFUSE system. (Doc. # 151 at 1). As to Grayson's presence in Florida, Scalfaro asserts that Grayson marketed and displayed the VerteLoc system twice in Florida: first, at the Congress of Neurological Surgeons conference in Orlando, Florida in September of 2008, and second, at the North American Spine Society conference in Orlando, Florida in October of 2010. Id. Grayson admits that he attended the September 2008 conference "to market and sell VerteLoc." (Doc. # 118-1 at 3). While Grayson does not admit to attending the 2010 American Spine Society conference in his affidavit, "a district court must . . . resolve any factual conflicts in the affidavits in the plaintiff's favor." Elecs. for Imaging, Inc., 340 F.3d at 1349; Autogenomics, Inc., 566 F.3d at 1017.

9

As detailed below, the Court concludes that, while it may not exercise personal jurisdiction over Grayson under Florida Statute sections 48.193(1)(a) or (f), it has jurisdiction over Grayson pursuant to section 48.193(1)(b).

### 1.   **Florida Statute section 48.193(1)(a)**

Florida law allows long-arm jurisdiction, pursuant to Florida Statute section 48.193(1)(a), where a person is "engaging in . . . a business or business venture in this state" and the cause of action arises out of that business venture. Fla. Stat. § 48.193(1)(a). Minsurg asserts that the Court has specific jurisdiction over Grayson pursuant to this provision. (Doc. #1 at 11).

"In order to constitute doing business under [section 48.193(1)(a)], the nonresident defendant's activities must be considered collectively and show a general course of business activity in the state for pecuniary benefits." Foster, Pepper & Riviera v. Hansard, 611 So. 2d 581, 582 (Fla. 1st DCA 1992) (citing Dinsmore v. Martin Blumenthal Assocs., Inc., 314 So. 2d 561, 564 (Fla. 1975)). In determining whether Grayson is engaging in a business in Florida, relevant factors "include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the

10

percentage of overall revenue gleaned from Florida clients." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (internal citations omitted).

It is uncontroverted that Grayson does not personally own or operate an office in Florida, does not possess or maintain a license or permit to do business in Florida, and has never owned any real, personal, or intangible property or maintained a bank account in Florida. (Doc. # 118-1 at 3-4). Minsurg fails to submit any indication of the number of Florida clients Grayson may have served, the percentage of revenue Grayson may have gleaned from Florida, or how many business transactions, if any at all, occurred between Grayson and persons or entities in Florida.

On these facts, this Court cannot conclude that Grayson has engaged in a general course of business activity in the state for pecuniary benefit. See Horizon, 421 F.3d at 1167. In Florida, "long arm statutes are to be strictly construed," Bank of Wessington v. Winters Gov't Sec. Corp., 361 So. 2d 757, 759 (Fla. 4th DCA 1978), and the language of the statute cannot be read broadly enough to characterize Grayson's activities in Florida as the carrying on of a business venture in this state. The Court concludes that Grayson was not engaged in a business venture in Florida such that it would

11

support the exercise of personal jurisdiction under section 48.193(1)(a).

### 2. **Florida Statute section 48.193(1)(f)**

Florida Statutes section 48.193(1)(f) provides that the court may exercise personal jurisdiction over a nonresident who causes an "injury to [a] person[] or property <u>within this state</u> arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury ... [t]he defendant was engaged in solicitation or service activities within this state . . . ." Fla. Stat. § 48.193(1)(f)(emphasis added).

Section 48.193(1)(f) does not, however, permit jurisdiction over nonresidents for acts arising outside the state which cause only financial or economic injury within the state. <u>Response Reward Sys., L.C. v. Meijer, Inc.</u>, 189 F. Supp. 2d 1332, 1337 (M.D. Fla. 2002)(citing <u>Sun Bank, N.A. v. E.F. Hutton & Co.</u>, 926 F.2d 1030, 1033 (11th Cir. 1991)); <u>Prentice</u>, 779 F. Supp. at 585.

Through the Scalfaro declaration, Minsurg alleges that "[t]he infringing and tortious activities of [] Grayson in connection with his efforts to have surgeons and hospitals utilize the VerteL[oc] System rather than the TruFUSE System have directly injured [Minsurg] in the State of Florida

12

because of the lost sales and revenues that [Minsurg] has experienced as a result." (Doc. # 151 at 3)(emphasis added). Because long arm statutes are strictly construed, Bank of Wessington, 361 So. 2d at 759, and Minsurg only articulates that it has suffered financial or economic injuries in Florida as a result of Grayson's conduct, the exercise of personal jurisdiction over Grayson may not be based on section 48.193(1)(f). Response Reward Sys., 189 F. Supp. 2d at 1337.

### 3. Florida Statute section 48.193(1)(b)

Minsurg, however, finds a personal jurisdiction foothold in section 48.193(1)(b). A person may avail himself of personal jurisdiction in Florida where he "commit[s] a tortious act within this state" and the cause of action arises out of that act. Fla. Stat. § 48.193(1)(b). As to the "tort" of patent infringement, the Federal Circuit has explained

> while it may be appropriate to speak loosely of patent infringement as a tort, more accurately the cause of action for patent infringement is created and defined by statute . . . The statute does not speak generally of the "tort of patent infringement," but specifically of a liability that arises upon the making, using, or selling of an infringing article. Thus, the statute on its face clearly suggests the conception that the "tort" of patent infringement occurs where the offending act is committed . . . .

N. Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1578-79 (Fed. Cir. 1994).

13

Minsurg submits that Grayson attended two conferences in Florida where he personally marketed the allegedly infringing VerteLoc system. (Doc. # 151 at 2-3). Minsurg has sued Grayson for patent infringement arising out of Grayson's: (i) "offering of the VerteLoc . . . surgical system;" (ii) "offering for sale . . . surgical techniques embodying the patented invention;" and (iii) "offering to sell . . . a material or apparatus for use in practicing processes embodied by the . . . '761 Patent." (Doc. # 1 at 69). Construing the pleadings and affidavits in the light most favorable to Minsurg, Autogenomics, Inc., 566 F.3d at 1017, the Court finds that by personally marketing the allegedly infringing VerteLoc system in Florida on two occasions, Grayson committed an allegedly tortious act in Florida which relates to the patent infringement claims at issue, and out of which the infringement claims arise. See Silent Drive, Inc., 326 F.3d at 1200 (citing Burger King Corp., 471 U.S. at 472-73). Based on the foregoing analysis, the exercise of personal jurisdiction over Grayson is appropriate pursuant to section 48.193(1)(b).

**E. Due Process**

The Court must now consider whether the assertion of personal jurisdiction over Grayson will violate due process.

14

Campbell Pet Co., 542 F.3d at 882. In order to ascertain whether the assertion of personal jurisdiction over Grayson will violate due process, the Court must address: "(1) whether the defendant 'has purposefully directed his activities at residents of the forum'; and (2) whether 'the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. at 884 (quoting Burger King, 471 U.S. at 472-73).

If those two conditions are satisfied, the Court must determine "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." Id. at 884 (quoting Burger King, 471 U.S. at 476). However, this third factor "is to be applied sparingly." Id. at 885. "When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King, 471 U.S. at 477).

Here, resolving the factual conflicts in the affidavits in Minsurg's favor, Elecs. for Imaging, Inc., 340 F.3d at 1349, the Court finds that Grayson personally marketed the

15

VerteLoc system twice in Florida: first, at the Congress of Neurological Surgeons conference in Orlando, Florida in September of 2008, and second, at the North American Spine Society conference in Orlando, Florida in October of 2010. (Doc. # 151 at 2-3). The Court has found that Minsurg's claims for patent infringement arise out of or relate to those purposeful activities in Florida. Campbell Pet Co., 542 F.3d at 884. Thus, the first two due process factors are satisfied.

As to the fair play and substantial justice factor, this Court finds that the facts presented in this matter do not allow for the application of this rarely-used exception from an otherwise appropriate exercise of jurisdiction. See id. at 885. While Grayson submits, without evidence, that it would be a burden for him to defend this action in Florida, that burden is outweighed by Minsurg's significant interest in acquiring relief from the alleged patent infringement. See Breckenridge Pharma., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1367 (Fed. Cir. 2006)("we . . . view [the defendant's] general assertion of hardship, without supporting evidence, as unpersuasive.")

Minsurg, "a company incorporated in Florida with its principal operations in Florida, has an interest in obtaining

16

convenient and effective relief from a nearby federal court." Id. (internal quotations omitted). In addition, the State of Florida has an interest in exercising jurisdiction over those who commit acts which cause injury to its residents. See id. ("Although . . . the principal dispute between the parties is one of federal patent law, that does not diminish Florida's interest in protecting its companies and residents.")(internal quotations omitted).

In light of this analysis, Grayson has not met his burden of showing a "compelling case that the exercise of jurisdiction over [him] would offend principles of fair play and substantial justice." Id. (internal quotations omitted). Thus, this Court finds that the exercise of personal jurisdiction over Grayson comports with considerations of fair play and substantial justice.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Dan Grayson's Motion to Dismiss (Doc. # 118) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of April, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

17

Copies to:

All Counsel of Record