# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**MINSURG INTERNATIONAL, INC.,**

      **Plaintiff,**

**v.**                                       **Case No. 8:10-CV-1589-T-33EAJ**

**OSTEOTECH, INC., et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This cause comes before the court following a July 25, 2011 <u>Markman</u> hearing.[1]
<u>See</u> <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996). The parties dispute the meaning
of twenty-nine terms[2] in U.S. Patent No. 7,708,761 ("the '761 Patent"). After considering the
parties' Joint Claim Construction Statement (Dkt. 253), the parties' Claim Construction Briefs (Dkt.
261, 273, 274), the documentary exhibits introduced at the <u>Markman</u> hearing (Plaintiff's Ex. 1-44),
the testimony of orthopedic surgeon Robert Bess, M.D. ("Dr. Bess"),[3] and the parties' citations of
supplemental authority (Dkt. 293, 294), the undersigned recommends that twelve of the disputed
terms in the '761 Patent, including one term found in the preambles to the two independent claims
in the '761 Patent, be construed as provided below and the remaining seventeen terms not be
construed as they do not have any special meaning for one skilled in the relevant art.

_____

[1]  The District Judge referred the <u>Markman</u> hearing to the undersigned for a report and
recommendation (Dkt. 212).

[2] For purposes of this opinion, a "term" is a word, phrase, or clause.

[3] Dr. Bess has been an orthopedic surgeon since 1984 and has engaged in facet fusion
surgery as part of his practice (Dkt. 291 at 62-66).

**Background**

Plaintiff is the assignee of the '761 Patent, titled "A Spinal Plug For A Minimally Invasive Facet Joint Fusion System" (Plaintiff's Ex. 2).  The '761 Patent discloses a surgical method to relieve back pain caused by "facet joints," i.e., "small joints located behind adjacent vertebrae in the spine that allow for spinal motion" (Plaintiff's Ex. 2 at col. 1 lines 29-32).  Plaintiff alleges that Defendant Osteotech, Inc. ("Osteotech") and the remaining Defendants ("Joint Defendants") manufacture and distribute surgical tool kits that surgeons use via methods that infringe the '761 Patent.

**Claim Construction Principles**

Patent claim terms are construed in accordance with the following bedrock principles adopted by the Federal Circuit:

> [T]he words of a claim are generally given their ordinary and customary meaning. [T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application....  Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification....
>
> In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.  In such circumstances, general purpose dictionaries may be helpful.  In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art.  Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.  Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.

Phillips v. AWH Corp., 415 F.3d 1303, 1312-14 (Fed. Cir. 2005) (citations and internal quotation marks omitted).

### The Specification

"[C]laims must be read in view of the specification, of which they are a part." Id. at 1315 (citation and internal quotation marks omitted).  "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Id. (citation and internal quotation marks omitted).  "The specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." Id. at 1316 (citation omitted).  "In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." Id. (citation omitted).

The '761 Patent specification includes an "Abstract," eleven "Figures," a "Background of the Invention," a "Summary of the Invention," a "Brief Description of the Drawings," a "Detailed Description of the Invention," and two independent claims, each of which has nine dependent claims (Plaintiff's Ex. 2).  Relevant language from the specification is identified, when available, for each of the terms construed below.

### The Prosecution History

"The prosecution history, ... designated as part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent."  Phillips, 415 F.3d at 1317.  "Like the specification, the prosecution

history provides evidence of how the PTO and the inventor understood the patent." Id. "Furthermore, like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent." Id. "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Id.

In November 2004, David A. Petersen, M.D. ("Petersen") filed a utility patent application ("the '720 Application") for an invention titled "Minimally Invasive Facet Joint Fusion" (Plaintiff's Ex. 3). A brief summary of the invention included the following:

> A minimally invasive facet joint fusion ... comprises a method, instrumentation and [graft] for use in minimally invasive, outpatient, arthroscopic spine surgery or classic open surgery.... According to one broad aspect of the present invention, the Arthroscopic Facet Joint Fusion method comprises a punch or drill that creates a hole through both levels of the facet joint in a conical pattern. The hole is filled with either the patient's own harvested and compacted bone plug using iliac crest autograft, pre-made, pre-shaped shaped cortical cadaveric allograft (the autograft or allograft formed by a unique bone plug press or machining) or FDA approved pre-made, pre-shaped synthetic grafts.

(Id.).

In September 2005, identifying the '720 Application as the parent application, Petersen filed a continuation-in-part application[4] ("the '519 Application") for a "Spinal Plug For A Minimally Invasive Facet Joint Fusion Surgery" (Plaintiff's Ex. 4). The '519 Application disclosed the following:

---

[4] "A continuation-in-part application contains subject matter from a prior application and may also contain additional matter not disclosed in the prior application." Go Med. Indus. Pty. v. Inmed Corp., 471 F.3d 1264, 1270 (Fed. Cir. 2006) (citation and internal quotation marks omitted); see 35 U.S.C. § 120.

A method of mounting a plug in a facet joint C1-C2 and L5-S1, the method comprising:

cutting an arthroscopic type portal in the tissue of a patient outside a diseased or damaged facet joint;

creating a hole between two opposed bones forming the facet joint;

inserting a frustum preshaped plug into the hole, the plug having a shape substantially the same as the hole;

providing the plug with an aperture on a top surface, the top surface diameter being greater than a bottom surface diameter;

providing the plug with at least one pair of flanges partially surrounding an outside wall and at least a first and second opposed pair of side apertures in the side wall of the plug;

providing an internal cortical channel from the top surface aperture to a first horizontal channel connecting the first pair of apertures and a second horizontal channel connecting the second pair of apertures;

inserting an application tube into the aperture in the top surface;

inserting a synthetic or biologic material compatible with bone into the applicator tube; and

providing sufficient pressure on the synthetic or biologic material to cause egress of the material from the side wall apertures.

(Id.).

On July 2, 2009, the United States Patent and Trademark Office ("USPTO") issued a Notice

of Allowance for the '519 Application (Plaintiff's Ex. 5).

One month later, Dan W. Grayson, the CEO of Defendant VG Innovations, Inc.,[5] advised

the USPTO that a 1993 article by Dr. Moni Stein ("the Stein Article") "clearly define[d] the

---

[5] Grayson was a Defendant in this matter until July 2011, when Plaintiff and Grayson stipulated to Grayson's dismissal from this matter with prejudice (Dkt. 271).

technique of [the '519 Application]" (Plaintiff's Ex. 6).

Within a week, the USPTO withdrew the '519 Application from issue to permit reopening of prosecution (Plaintiff's Ex. 5).

In an August 17, 2009 Request for Continued Examination, Don Pelto, Esq.[6] ("Pelto") proposed canceling most of the claims in the '519 Application and adding seven new claims (Id.). One of the new claims disclosed the following:

A method comprising:

creating a minimally invasive portal by an incision in the tissue of a human patient;

accessing a facet joint through said portal;

wherein said facet joint comprises a first facet joint bone and second facet joint bone, and wherein said first facet joint bone comprises a first articulated surface and said second facet joint bone comprises a second articulated surface, and wherein said first articulated surface and said second articulated surface face each other at said facet joint;

drilling a hole with a drill bit into said facet joint between said first articulated surface and said second articulated surface;

removing said drill bit from said hole;

inserting a facet joint fusion plug into said hole; and

further comprising the step of tamping said facet join fusion plug into said hole.

(Id.)  The other new claims disclosed these limitations as well as additional limitations (Id.).

On September 10, 2009, Petersen, Pelto, and the USPTO examiner discussed the proposed claim amendments and prior art, including U.S. Patent No. 7,452,369 and the Stein Article (Id.). Although they did not reach an agreement with respect to the claims, the examiner agreed to

---

[6] At the hearing, Plaintiff's counsel advised that Pelto is his law partner and took over prosecution of the '761 Patent (Dkt. 291 at 137).

postpone deciding patentability until Pelto added structure limitations and steps designed to overcome the prior art (Id.).

Five days later, Pelto proposed canceling all of the existing claims and adding twenty new claims (Id.).  One of the two proposed independent claims read as follows:

A method comprising:

placing a portal into a human patient through a minimally invasive incision in the tissue of a human patient;

accessing a facet joint through said portal, wherein said facet joint comprises a first facet joint bone and a second facet joint bone, and wherein said first facet joint bone comprises a first articulated surface and said second facet joint bone comprises a second articulated surface, and wherein said first articulated surface and said second articulated surface face each other at said facet joint;

inserting a drill bit into said portal;

drilling a hole with said drill bit into said facet joint between said first articulated surface and said second articulated surface through said portal;

removing said drill bit from said hole through said portal;

inserting a facet joint fusion plug into said hole through said portal;

inserting a tamping instrument into said portal; and

tamping said facet joint fusion plug into said hole with said tamping instrument through said portal.

(Id.).  The other proposed independent claim was identical except for replacing the final two steps with the following step:

pushing said facet joint fusion plug into said hole through said portal, wherein said facet joint fusion plug comprises bone.

(Id.)  Pelto further amended the specification by adding Figures 10 and 11 and "descriptive text describing the arthroscopic type portal shown in Figure 10" (Id.).

7

On September 28, 2009, the examiner rejected all twenty proposed claims (Id.).  Although the '519 Application provided that "[t]he grafts and system are specifically designed for use in a minimum invasive or an arthroscopic type portal for stand-alone procedures" (Plaintiff's Ex. 4), the examiner objected to the specification as failing to provide the "proper antecedent basis" for disclosing that a tamping instrument is inserted through the portal (Plaintiff's Ex. 5).  To overcome this issue, the examiner required amending the specification to incorporate language from the '720 Application providing that the instrumentation, as well as the graft and method, were designed for use in an arthroscopic type portal (Id.).

The examiner further rejected the claims as unpatentable over U.S. Patent No. 7,223,269 ("Chappuis") in view of U.S. Patent No. 5,772,661 ("Michelson") and U.S. Patent No. 4,501,269 ("Bagby") (Id.).  According to the examiner, Chappuis disclosed each of the steps in the proposed independent claims except for inserting a drill through the portal, inserting tamping instruments through the portal, and tamping the plug into the drilled hole through the portal (Id.).  Noting that Michelson disclosed placing a portal, placing a drill within the portal, and then placing a deployment tool with an implant, the examiner found it obvious to insert a drill within the portal and then place a delivery tool through the portal (Id.).  Noting that Bagby disclosed placing an implant by impacting the end of a deployment tool, the examiner found it obvious to use a tamper to facilitate inserting the plug (Id.).

On October 15, 2009, Pelto amended the specification, adding the language from the '720 Application providing that "the instrumentation, grafts and method are specifically designed for use

8

in an arthroscopic type portal for stand-alone procedures" (Id.).[7]  Pelto then requested withdrawal

of the rejection, maintaining that, regardless of Michelson and Bagby, Chappuis did not disclose

placing a portal into a human patient through a minimally invasive incision (Id.)  Pointing out that

Chappuis described an open surgical procedure using a retractor and trochar to dilate muscle

surrounding the facet joint, Pelto argued that combining this method with the method of Michelson

or Bagby to perform an arthroscopic surgical procedure would "destroy Chappuis' principle of

operation" because Chappuis called for displacing a facet bur along the facet joint, requiring the

space provided by open surgery, which would not be available through minimally invasive surgery

(Id.).

On January 22, 2010, in response to Pelto's October 15, 2009 amendment, the examiner

allowed the proposed claims, renumbering them 1-20 (Id.).  The examiner amended the preambles

to the two independent claims (Claims 1 and 11) from "A method comprising:" to "An arthroscopic

type portal facet surgical method comprising:" (Id.).  In his Reasons for Allowance, the examiner

explained that he found "no evidence in the prior art of arthroscopic type portal facet surgical

method" implementing the steps in Claim 1 (Id.).  The examiner distinguished Chappuis as

disclosing open surgery, as opposed to minimally invasive surgery, because it required movement

of a facet bur along the length or width of the facet joint (Id.).  The examiner further distinguished

Chappuis as disclosing percutaneous surgery, i.e., surgery performed through the skin (Id.).  Pelto

---

[7] The '761 Patent includes both this provision and the provision that "[t]he grafts and system are specifically designed for use in a minimum invasive or arthroscopic type portal for stand-alone procedures" (Plaintiff's Ex. 2 at col. 1 line 60 - col. 2 line 5).

verbally authorized the examiner's amendment during an interview that same day (Id.).[8]

One week later, the USPTO issued a Notice of Allowance for the '519 Application (Id.).  On May 4, 2010, the USPTO issued the '761 Patent, naming Petersen as the inventor and Plaintiff as the assignee (Plaintiff's Ex. 2).

### Analysis

## I.   The Preambles

The parties dispute whether, and to what extent, the preambles to Claims 1 and 11 limit those claims and their dependent claims.

"Whether to treat a preamble term as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent."  Am. Med. Sys. v. Biolitec, Inc., 618 F.3d 1354, 1359 (Fed. Cir. 2010) (citation and internal quotation marks omitted). A preamble generally does not limit claims, but may be construed as limiting "if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." Id. (citation and internal quotation marks omitted).  Moreover, "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention."  Catalina Mktg. Int'l v. Coolsavings.com, 289 F.3d 801, 808-09 (Fed. Cir. 2002) (citation omitted).  "Without such reliance, however, a preamble generally is not limiting when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention." Id. (citation omitted).

---

[8] The examiner stated that authorization for the amendment "was given in an interview with Mr. Don Pelto on January 22, 2010" (Plaintiff's Ex. 5).

On September 28, 2009, the examiner concluded that Chappuis disclosed most of the steps in Claims 1 and 11, including placing a portal into a human patient through a minimally invasive incision (Plaintiff's Ex. 5).  On January 22, 2010, however, the examiner distinguished Chappuis as disclosing open surgery, as opposed to minimally invasive surgery, because it required movement of a facet bur along the length or width of the facet joint (Id.).  The examiner further distinguished Chappuis as disclosing surgery performed through the skin (Id.).  In so distinguishing Chappuis, the examiner amended the preambles to Claims 1 and 11 to describe not merely "a method," but rather "an arthroscopic type portal facet surgical method" (Id.).

Emphasizing that the examiner ultimately distinguished Chappuis as disclosing open surgery performed through the skin, Plaintiff contends that the examiner's amendment to the preambles was nothing more than a convenient label (Dkt. 261 at 9).  Joint Defendants maintain that the examiner amended the preambles to limit the '761 Patent to surgery using an arthroscopic-type portal as opposed to the type of portal disclosed by Chappuis (Dkt. 274 at 16-17).  Osteotech does not take a position on this issue (Dkt. 273 at 15).

The examiner's September 2009 conclusions demonstrate that the examiner considered an opening in the skin to be a type of portal.  Consequently, the examiner's January 2010 amendment to the preambles distinguished surgery through an arthroscopic type portal, i.e., a portal that is not a mere opening in the skin.  Here, addition of the phrase "arthroscopic type portal" to the preambles to Claims 1 and 11 was critical for patentability.  Pelto recognized this when he amended the specification to clarify that the "instrumentation, grafts and method are specifically designed for use in an arthroscopic type portal for stand-alone procedures."  When Pelto later authorized the amendments to the preambles, he relied on those amendments to distinguish the '761 Patent from

11

Chappuis.[9]  In doing so, Pelto transformed the preambles into claim limitations.  See Catalina, 289 F.3d at 808-09.  Consequently, where the term "arthroscopic type portal" appears in the preambles to Claims 1 and 11, it gives life, meaning and vitality to those claims and therefore limits them.  See, e.g., MBO Labs. Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1329-30 (Fed. Cir. 2007).

Plaintiff maintains that a different conclusion is warranted by the doctrine of claim differentiation, which provides that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." Halliburton Energy Servs. v. M-I LLC, 514 F.3d 1244, 1252 n.3 (Fed. Cir. 2008) (citation and internal quotation marks omitted).  Plaintiff emphasizes that dependent Claims 4 and 15 disclose "the method of claim [1/11], wherein said portal comprises an arthroscopic type portal" (Plaintiff's Ex. 2 col. 6 lines 18-19, col. 7 lines 5-6).  Although the doctrine of claim differentiation might otherwise support a finding that Claims 4 and 15 distinguish the portal in Claims 1 and 11 from an arthroscopic-type portal, "any presumption created by the doctrine of claim differentiation 'will be overcome by a contrary construction dictated by the written description or prosecution history.'" Retractable Techs., Inc. v. Becton, Dickinson & Co., ___ F.3d ___, No. 2010–1402, 2011 WL 2652448, at *7 (Fed. Cir. July 8, 2011) (quoting Seachange Int'l, Inc. v. C-COR, Inc., 413 F.3d 1361, 1369 (Fed. Cir. 2005)).  Here, the presumption created by the doctrine of claim differentiation must give way because the prosecution history dictates that "arthroscopic-type portal" is a limitation on Claims 1 and 11.  The prosecution history is not ambiguous as to the meaning of the term "arthroscopic-type portal;" this is not a case where "[t]wo strong and contradictory interpretive

---

[9] At the hearing, Plaintiff's counsel stated that Pelto acceded to the amendment, a necessary condition for the '761 Patent's issuance (Dkt. 294 at 137).

strands run through the patent's prosecution history." <u>Athletic Alternatives, Inc. v. Prince Mfg.,</u> <u>Inc.</u>, 73 F.3d 1573, 1580 (Fed. Cir. 1996).

The parties also dispute whether the term "arthroscopic type portal facet surgical method" is a limitation on Claims 1 and 11 and their dependent claims. Although the "arthroscopic type portal" portion of this term is a limitation, the "facet surgical" portion does not give life, meaning, and vitality to Claims 1 and 11, which obviously disclose facet joint surgery. Moreover, there is no evidence that the examiner added the term "facet surgical" to distinguish Chappuis, which clearly discloses facet joint surgery, or any other prior art. Therefore, the term "arthroscopic type portal facet surgical method" is not a limitation on Claims 1 and 11 and their dependent claims.

## II.   <u>Claim Construction</u>

Plaintiff, Osteotech, and Joint Defendants propose conflicting constructions of twenty-nine terms in the '761 Patent. The court finds that twelve of those terms require a definition; the other seventeen terms do not.

### <u>Terms Requiring Construction</u>

#### 1)    **"arthroscopic-type portal"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| a minimally invasive portal | no position | an arthroscope or similar portal which allows access to the interior of a joint for visual examination and the carrying out of diagnostic or therapeutic procedures within the joint. An arthroscopic type portal is a cylinder or tube which provides access to the joint via a small incision in the skin and progressive dilation of the intervening soft tissue. An |

| | | arthroscopic type portal has an outer surface that prevents encroachment of surrounding biological material into the surgical site at the facet joint and an inner surface forming a substantially cylindrical space that provides access to the facet joint for the surgical tools |
| --- | --- | --- |

The "Detailed Description of the Invention" discloses that an arthroscopic type portal "allow[s] access to the joint through a small incision and progressive dilation of the intervening soft tissue" (Id. at col. 4 lines 54-57, col. 5 lines 13-16).

In one embodiment, an arthroscopic type portal "comprises a cylindrical tube configured to provide access to a facet joint during surgery" that "has an outer surface that prevents the encroachment of surrounding biological material into the surgical site and has an inner surface that forms a substantially cylindrical space that provides access to the facet joint through an otherwise limited incision" (Id. at col. 5 lines 16-19).  Figures 4, 11 and 12 indicate that an arthroscopic type portal is a hollow tube through which surgical tools access a facet joint (Id. at Figures 4, 11, and 12).

Claims 1 and 11 confirm that a portal must be capable of placement into a human patient through a minimally invasive incision in the patient's tissue (Id. at col. 5 lines 54-55, col. 6 lines 42-43).  Consequently, a portal is not a mere opening in a patient's tissue, but rather an object that can be placed through such an opening.  A portal must provide access to a facet joint and allow the insertion of a drill bit, facet joint fusion plug, and tamping instrument (Id. at col. 5 line 56 - col. 6 line 5).

At the Markman hearing, Dr. Bess testified that an arthroscopic-type portal is not an incision

but rather a metal tube that is millimeters in diameter and does not require direct visualization of the surgical site (Dkt. 291 at 88-89, 116). Indeed, Dr. Bess maintained that it would be "impossible" to see through an arthroscopic-type portal because of its limited diameter (Id. at 101-02). He affirmed that a portal three centimeters in diameter is not an arthroscopic-type portal because an arthroscopic-type portal is "something maybe less than a centimeter" in diameter (Id. at 105-06). Moreover, Dr. Bess clarified that an arthroscopic-type portal "can be a tube or it could be triangular in shape or trapezoidal in shape or it could be octagonal in shape, but it has to be hollow in the center to hold the soft tissue away" (Id. at 119).

Although Dr. Bess testified that the diameter of an arthroscopic-type portal is "maybe something less than one centimeter," no party's proposed definition incorporates a diameter measurement to the disputed term or the additional restriction precluding direct visualization through the portal. In any event, consideration of Dr. Bess's testimony is unnecessary to define this term.

Based on the intrinsic evidence, an arthroscopic-type portal is "a hollow, open-ended tube, capable of placement through a minimally invasive incision, that allows access to a facet joint."

2)      "a portal"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| a surgical instrument for providing a surgical space to provide access for other surgical instruments to surgical sites | an open-ended tube, i.e., hollow | an arthroscopic type portal |

Because Claims 1 and 11 are limited by the term "arthroscopic-type portal" in their preambles, "a portal" should be defined as "an arthroscopic-type portal" for purposes of the '761 Patent.

### 3)   "minimally invasive incision in the tissue of said human patient"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| small incision for use in minimally invasive surgery | no position | the smallest possible cut made in the tissue of a human patient that permits placing said portal through the cut and achieving access to the patient's facet joint through said portal by progressively dilating intervening soft tissue provided that the cutting and progressive dilation of the tissue do not create an opening in the tissue through which surgical instrumentation can be inserted and displaced along the length of the facet joint |

Claims 1 and 11 disclose that a minimally invasive incision is at least large enough for placement of an arthroscopic-type portal through the incision (Plaintiff's Ex. 2 at col. 5 lines 54-55, col. 6 lines 41-42). However, the remaining intrinsic evidence does not otherwise define a minimally invasive incision (aside from Claims 1 and 11, the term "minimally invasive incision" does not appear in the '761 Patent specification).

At the evidentiary hearing, Dr. Bess testified that a minimally invasive incision is "a small incision used for minimally invasive surgery" (Dkt. 291 at 78). Dr. Bess further stated that surgeons "can't directly see the area where [they]'re doing surgery through that little tiny incision ... unless there's some other aid like a cannula or a portal" (Id. at 80). He asserted that the size of a minimally invasive incision "is, for the most part, determined by the size of the portal, it doesn't need to really be any larger than that" (Id. at 100).

Given the lack of relevant detail in the specification and Dr. Bess's testimony, a "minimally

invasive incision in the tissue of said human patient" is "an incision in the tissue of said human patient that is large enough to allow placement of an arthroscopic type portal through the incision but small enough to preclude direct visualization of the surgical area without a surgical tool or aid."

4)      **"placing a portal into a human"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| placing a portal through a small incision in the tissue of the human patient through a minimally invasive incision in the tissue of said human patient | no position | placing an arthroscopic type portal via a small incision in the skin and progressive dilation of the intervening soft tissue |

The "Detailed Description of the Invention" discloses that "the tapered drill is specifically used through an arthroscopic type portal allowing access to the joint through a small incision and progressive dilation of the intervening soft tissue" (Id. at col. 4 lines 54-59).

In one embodiment, "a bone punch instrument ... is specifically invented to be used through an arthroscopic type portal allowing access to the joint through a small incision and progressive dilation of the intervening soft tissue" (Id. at col. 5 lines 10-16).

Claims 1 and 11 disclose that a portal is placed into a human "through a minimally invasive incision in the tissue of said human patient" (Id. at col. 5 lines 54-55, col. 6 lines 41-42).

Although the specification discloses that placement of the portal may involve progressive dilation of the intervening soft tissue, the claims do not disclose that progressive dilation of intervening soft tissue is a necessary condition for placement of a portal.  Therefore, "placing a portal into a human" means "placing a portal through a minimally invasive incision in the tissue of a human."

17

5)     **"accessing a facet joint through said portal"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| obtaining access to a facet joint through the surgical space provided by the portal | plain meaning in light of proposed construction of "through said portal" | obtaining access through an arthroscopic type portal to the interior of a facet joint for visual examination and the carrying out of diagnostic or therapeutic procedures within the joint.  To be distinguished from surgeries in which access to the facet joint is obtained through other means, such as open surgeries (a surgery in which the facet joint and other tissues are exposed to view through the surgical incision) or other surgeries in which a limited incision is made but an arthroscopic type portal is not used |

Claims 1 and 11 disclose that the portal accesses the facet joint after the portal is placed and before anything is inserted into the portal (Id. at col. 5 lines 54-63, col. 6 lines 41-50).  Therefore, "accessing a facet joint through said portal" means "placing the portal so that surgical instruments inserted into one end of the portal can access the facet joint through the other end of the portal."

6)     **"hole"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| a hollowed out place, in this instance in a facet joint | a hollowed out place, in this instance in a facet joint | a hollowed out place formed by a drill bit, in this instance in a facet joint |

The parties agree that a hole is a hollowed out place, in this instance in a facet joint.  Joint

18

Defendants correctly point out that the term needs further definition as being formed by a drill bit; Claims 1 and 11 disclose "drilling a hole with said drill bit into said facet joint" (Id. at col. 5 lines 64-66, col. 6 lines 51-53).  Therefore, a "hole" is "a hollowed out place drilled in a facet joint with a drill bit."

7) **"drilling a hole with said drill bit into said facet joint between said first articulated surface and said second articulated surface through said portal"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| drilling a hole into said first articulated surface and said second articulated surface of said facet joint using said drill bit through said portal | plain meaning in light of proposed construction of "through said portal" | after inserting a drill bit into said portal, that drill bit is rotated, and the surgeon creates a hole in the facet joint by applying the rotating drill bit to the surfaces of the adjacent vertebrae comprising the facet joint |

The "Summary of the Invention" discloses that, "[a]ccording to one broad aspect of the present invention, the arthroscopic facet joint fusion system comprises a punch or drill that creates a hole through both sides of the facet joint in a conical pattern" (Id. at col. 2 lines 19-23).  In one example, "the punch/drill ... create[s] a specific sized hole through both sides of the spinal facet joint" (Id. at col. 2 lines 31-36).  The drill bit "can be used to create the opening, either in a horizontal or vertical direction through the facet joint" (Id. at col. 2 lines 36-39).

The "Detailed Description of the Invention" discloses that a "tapered drill is employed to prepare a hole between two bones" (Id. at col. 3 lines 30-32) (citations to Figures 2 and 3 omitted).

Claims 1 and 11 disclose that: (1) a facet joint "comprises a first facet joint bone and a second facet joint bone;" (2) the first facet joint bone "comprises a first articulated surface;" (3) the

second facet joint bone "comprises a second articulated surface;" and (4) the two articulated surfaces face each other (Id. at col. 5 lines 56-62, col. 6 lines 43-49).

The term discloses drilling a hole "into" a first facet joint bone, comprised of two articulated surfaces, and "between" those surfaces. Plaintiff's proposed definition, which contemplates drilling a hole "into" the two articulated surfaces, does not account for the hole's creation "between" the two articulated surfaces. Therefore, "drilling a hole with said drill bit into said facet joint between said first articulated surface and said second articulated surface through said portal" means "drilling a hole with said drill bit into and between the two articulated surfaces comprising said facet joint, through said portal."

8)      "facet joint fusion plug"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
| --- | --- | --- |
| an implant used or serving to fill a hole in a facet joint and promote facet joint fusion | no position | circular piece of synthetic or biologic material having at least one channel and synthetic or biologic material passing through the channel |

The "Background of the Invention" discloses "insertion of either pre-made, pre-shaped synthetic cortical bone or harvested and compacted iliac crest grafts, autologous or cadaveric allografts" (Id. at col. 1 lines 13-18).

The "Summary of the Invention" discloses "[t]he use of pre-shaped, harvested or synthetic bone as a structural fixation for facet joint fusion" (Id. at col. 1 lines 52-53).

The "Detailed Description of the Invention" discloses that, in one embodiment, "the bone plug of this invention is an inverted frustum shaped device having a vertical central channel for insertion of a synthetic or biologic material to assist in fusing the bone plug in place in a spinal joint.

20

The bone plug has multiple side parts for excretion of the synthetic or biological material from the central channel.  A pair of opposed flanges on the same plane partially circumvent the bone plug near bottom end having a smaller diameter than the top end" (Id. at col. 3 lines 21-29) (citations to Figure 1 omitted).

In another embodiment, "an application tube is inserted in channel to permit insertion of a synthetic or biologic material into bone plug.  The biologic material flows down channel and excess biologic material flows out of side parts and through channels into a space between the bones and an exterior side wall of the bone plug.  The flanges act as detents to hold the bone plug in place with hole. [T]he biologic material flows outwardly from openings into a space to cement the plug in place" (Id. at col. 3 lines 30-46) (citations to Figures 4, 5, and 7 omitted).

In an "alternative plug," "[a] central channel feeds biologic material to side channels.  In like manner, biologic material flows out through openings and promotes bonding to the bone.  A second parallel pair of flanges are added to flanges to increase the strength of the plug in the hole.  Side wall in like manner to plug is narrower in diameter at a bottom end that its top end" (Id. at col. 3 lines 47-54) (citations to Figures 8 and 9 omitted).

Notwithstanding these embodiments, "a frustum shaped bone graft can be employed when no additional biologic material is required" (Id. at col. 5 lines 7-9, Figure 10) (citations to Figure 10 omitted).

Claims 1 and 11 provide that a facet joint fusion plug must be capable of insertion through the portal (Id. at col. 6 lines 1-2, 56-57).

Although the specification discloses facet joint fusion plugs with vertical central channels

through which biologic material flows, the specification also discloses the use of a frustum-shaped[10] bone graft without any such channel. Therefore, Defendants' proposed construction is overly limiting. Plaintiff's proposed construction, by contrast, is overly vague because it in no way defines the material constituting the plug. Based on the intrinsic evidence, a "facet joint fusion plug" is "an implant made of harvested or synthetic bone that can be inserted through the portal and can fuse to the facet joint."

9)     **"harvested compact iliac crest graft"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| a graft comprising the upper elevated margins of the ileum that are taken from a human being | no position | upper elevated margins of the ileum that are taken from a human and inserted into another human |

Plaintiff and Joint Defendants agree that: (1) "iliac crest" means "the upper elevated margins of the ileum;" and (2) "graft" means "a tissue or an organ taken from a site or a person and inserted into a new site or person, performed to repair a defect in structure." Mosby's Medical, Nursing and Allied Health Dictionary (5th ed. 1994).

Therefore, "harvested compact iliac crest graft" means "tissue or an organ taken from the upper elevated margins of the ileum of a person and inserted into a new site or person."

10)     **"autologous autograft"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|

---

[10] Although the meaning of "frustum" is not disputed, the term means "the part of a cone-shaped solid next to the base and formed by cutting off the top by a plane parallel to the base." Webster's Third New International Dictionary 917 (1981).

| a graft comprising tissue derived from the same individual that is to receive the graft | no position | tissue occurring naturally and transplanted from one part of the body to another location in the same individual |
|---|---|---|

Plaintiff and Joint Defendants agree that: (1) "autologous" means "pertaining to a tissue or structure occurring naturally and derived from the same individual such as blood donated by a patient before surgery to be returned to the patient during or after surgery;" (2) "autologous graft" means "the transfer of tissue from one site to another on the same body;" and (3) "autograft" means "surgical transplantation of any tissue from one part of the body to another location in the same individual." Mosby's Medical, Nursing and Allied Health Dictionary (5th ed. 1994).

Therefore, "autologous autograft" means "naturally occurring tissue transferred from one site to another site on the same body."

### 11)   "cadaveric allograft"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| a graft comprising tissue from a cadaver or corpse | no position | tissue occurring naturally and transplanted from one part of a corpse to another location in another living individual |

An "allograft" is "surgical transplantation of tissue between two genetically dissimilar individuals of the same species, such as between two humans who are not monozygotic twins. Tissues commonly used for allografts include cornea, cartilage, bone, artery, and cadaver skin stored in a skin-tissue bank." Mosby's Dictionary of Medicine, Nursing, & Health Professions (2009).

Therefore, a "cadaveric allograft" is "surgical transplantation of tissue from a human cadaver to another human."

12)   **"material that can integrate into said facet joint through bone ingrowth"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| material that can integrate into the facet joint through bone growing into the material | no position | naturally occurring bone which permanently fuses with the facet joint as a result of natural bone growth |

The "Detailed Description of the Invention" discloses that "[p]ermanent fixation occurs when bone in-growth occurs into the joint itself and into the plug over time" (Id. at col. 5 lines 4-6).

Plaintiff's proposed construction is consistent with the specification.  Therefore, "material that can integrate into said facet joint through bone ingrowth" means "material that can integrate into said facet joint through bone growing into the material."

**Terms Not Requiring Construction**

1)   **"arthroscopic type portal facet surgical method"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| not a limitation | no position | surgery on the facet joint where access to the facet joint is obtained solely through an arthroscopic type portal placed via a small incision in the skin and progressive dilation of the intervening soft tissue.  An arthroscopic type portal facet surgical method does not include surgeries involving other methods of access to the facet joint, such as open surgery (a surgery in which the facet joint and other tissues are exposed to view through the surgical incision) or other surgeries in which a limited |

24

| | | incision is made but an arthroscopic type portal is not used |
|---|---|---|

Construction of this term is unnecessary as it does not limit the '761 Patent.  See supra at12-

13.

### 2)    "facet joint"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| no construction needed | no position | the facet joint connects the individual spinal bones (i.e., the vertebra) which make up the spinal column, or spine. A facet joint is the joint between two connecting vertebra defined by the superior articular process of one vertebra and the inferior articular process of the vertebra directly above it |

Construction of this term is unnecessary as the evidence does not indicate that the term has

any special meaning for one skilled in the relevant art.  Whether the jury will require further

definition of this term can be determined at trial.

### 3)    "first facet joint bone"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| one of the two bones forming a facet joint | no position | the superior or inferior articular process of a vertebra |

Construction of this term is unnecessary as the evidence does not indicate that the term has

any special meaning for one skilled in the relevant art.  Whether the jury will require further

25

definition of this term can be determined at trial.

### 4) "second facet joint bone"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
| --- | --- | --- |
| the other of the two bones forming a facet joint | no position | the superior or inferior articular process of a second vertebra, forming a facet joint with the first facet joint bone |

Construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art. Whether the jury will require further definition of this term can be determined at trial.

### 5) "through said portal"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
| --- | --- | --- |
| through the surgical space provided by the portal | extending something inside said portal from one open end of said portal to the other open end of said portal | no position |

Given the definition of "portal" as a "hollow, open-ended tube," construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

### 6) "drill bit"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
| --- | --- | --- |
| the cutting part of a rotating cutting instrument for making holes in tissue | no position | rotating sharpened tool to bore a hole |

Construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

### 7)    "into said portal"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| into the surgical space provided by the portal | placing an instrument within an opening of said portal | no position |

Given the definition of "portal" as a "hollow, open-ended tube," construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

### 8)    "inserting a drill bit into said portal"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| inserting a drill bit into a space defined by the portal | plain meaning in light of proposed construction of "into said portal" | after accessing a facet joint through said portal, a drill bit is placed into said portal and pushed down said portal until contact is made between one end of the drill bit and the facet joint |

Given the definition of "portal" as a "hollow, open-ended tube," construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

### 9)    "removing said drill bit from said hole through said portal"

27

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| no construction needed | plain meaning in light of proposed construction of "through said portal" | after drilling a hole in the facet joint, the surgeon removes the drill bit completely out of the hole in the facet joint and said portal |

Given the definition of "portal" as a "hollow, open-ended tube," construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

**10)    "inserting a facet joint fusion plug into said hole through said portal"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| no construction needed | plain meaning in light of proposed constructions of "though said portal" and agreed-upon construction of "said hole" | using an instrument to hold a plug (inserter), the surgeon inserts the facet fusion plug and inserter into said portal and guides the plug to the opening of the hole in the facet joint |

Given the definition of "portal" as a "hollow, open-ended tube," construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

**11)    "inserting a tamping instrument into said portal"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|

| inserting a tamping instrument into the surgical space provided by the portal | plain meaning in light of proposed construction of "into said portal" | after positioning the plug in the hole and removing the inserter from said portal, one end of the tamping instrument is positioned at the opening of said portal by the surgeon and guided down said portal until one end of the tamping instrument rests on top of the plug |

Given the definition of "portal" as a "hollow, open-ended tube," construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

12)   **"tamping said facet fusion plug into said hole with said tamping instrument"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| no construction needed | plain meaning in light of proposed construction of "through said portal" | moving the tamping instrument in a repeated sliding motion within said portal to drive the plug tightly into the hole such that the top of the plug is positioned substantially in line with the facet joint |

Construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

13)   **"pushing said facet joint fusion plug into said hole through said portal"**

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| no construction needed | plain meaning in light of proposed construction of "through said portal" and agreed-upon construction of "said hole" | through the arthroscopic portal, constant force is placed on one end of the facet joint fusion plug to cause the plug to fill the void in the hole in the facet joint |

Construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

### 14) "synthetic bone substitute"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| bone substitute that comprises a substance produced by an artificial process | no position | substance produced from artificial material that is substituted for naturally occurring bone |

Plaintiff and Joint Defendants agree that "synthetic" means "pertaining to a substance that is produced by an artificial rather than natural process or material." Mosby's Medical, Nursing and Allied Health Dictionary (5th ed. 1994).

As this definition confirms that "synthetic" does not have any special meaning for one skilled in the relevant art, construction of this term is unnecessary.

### 15) "metal bone substitute"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| bone substitute that comprises metal | no position | metal that is substituted for naturally occurring bone |

Construction of this term is unnecessary as the evidence does not indicate that the term has

any special meaning for one skilled in the relevant art.

### 16)   "shape"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| spatial form | no position | the visual appearance of a thing |

Construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

### 17)   "bone"

| Plaintiff's Construction | Osteotech's Construction | Defendants' Construction |
|---|---|---|
| no construction needed | no position | the dense, hard and somewhat flexible connective tissue |

Construction of this term is unnecessary as the evidence does not indicate that the term has any special meaning for one skilled in the relevant art.

### <u>Conclusion</u>

A <u>Markman</u> hearing having been held, the court finds that the term "arthroscopic-type portal," found in the preambles to Claims 1 and 11, limits those claims and their dependent claims. As stated previously, of the twenty-nine terms in dispute, the court should decline to construe seventeen of them and construe twelve of them as follows:

| Term | Construction |
|---|---|
| arthroscopic-type portal | a hollow, open-ended tube, capable of placement through a minimally invasive incision, that allows access to a facet joint. |
| a portal | synonymous with arthroscopic-type portal |

31

| minimally invasive incision in the tissue of said human patient | an incision in the tissue of said human patient that is large enough to allow placement of an arthroscopic type portal through the incision but small enough to preclude direct visualization of the surgical area without a surgical tool or aid |
|---|---|
| placing a portal into a human | placing a portal through a minimally invasive incision in the tissue of a human |
| accessing a facet joint through said portal | placing the portal so that surgical instruments inserted into one end of the portal can access the facet joint through the other end of the portal |
| hole | a hollowed out place drilled in a facet joint with a drill bit |
| drilling a hole with said drill bit into said facet joint between said first articulated surface and said second articulated surface through said portal | drilling a hole with said drill bit into and between the two articulated surfaces comprising said facet joint |
| facet joint fusion plug | an implant made of harvested or synthetic bone that can be inserted through the portal and can fuse to the facet joint |
| harvested compact iliac crest graft | tissue or an organ taken from the upper elevated margins of the ileum of a person and inserted into a new site or person |
| autologous autograft | naturally occurring tissue transferred from one site to another site on the same body |
| cadaveric allograft | surgical transplantation of tissue from a human cadaver to another human |
| material that can integrate into said facet joint through bone ingrowth | material that can integrate into said facet joint through bone growing into the material |

Date:   August 26, 2011

ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge